IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 25-cr-00063-SKC-3

UNITED STATES OF AMERICA,

Plaintiff,

v.

3. MICHELLE PEÑA,

Defendant.

---

# PLEA AGREEMENT

---

The United States of America (the government), by and through Garreth Winstead, Deputy United States Attorney for the District of Colorado, and Talia Bucci, Assistant United States Attorney, and the defendant, Michelle Peña, personally and by counsel, Jamie Hubbard, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I. AGREEMENT

### A. Defendant's Agreement:

The defendant agrees to

(1) plead guilty to a lesser included offense of Count 7 of the Second Superseding Indictment charging a violation of Conspiracy to possess with intent to distribute more than 50 grams of methamphetamine mixture, in violation of 21 U.S.C. § 846; and plead guilty to Count 8 of the Second Superseding Indictment charging Conspiracy to use a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(o);

(2) waive certain appellate and collateral attack rights, as explained in detail below;



Court Exhibit

1

(3) agree not to contest forfeiture as more fully described below.

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend a sentence within the guideline range as finally calculated by the Court. The parties understand that this agreement is not binding on the Court. The United States also agrees to move to dismiss Count 9 of the Second Superseding Indictment as to this defendant at the time of sentencing. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

If the defendant engages in conduct which implicates USSG § § 3C1.1 cmt. N.4 between the guilty plea and sentencing in this case, in addition to any other consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and

voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute[s] of conviction;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 31; or

(3) the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The United States agrees not to argue a procedural bar to a prosecutorial misconduct claim raised in a § 2255 petition based on the failure of the defendant to raise that issue on direct appeal.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may

appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of Assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: a Taurus G3C 9mm pistol, a Sig Sauer P365 9mm pistol, a Smith & Wesson SD9VE 9mm pistol, a Ruger Blackhawk .357 magnum revolver, and a privately manufactured AR-15 style rifle with no serial number. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the

forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the charges are as follows:

**Count 7: 21 U.S.C. § 846**

*First*: two or more persons agreed to violate the federal drug laws;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy;

*Fourth*: there was interdependence among the members of the conspiracy; and

*Fifth*: the overall scope of the conspiracy involved at least 50 grams of a mixture containing methamphetamine.

**Count 8: 18 U.S.C. § 924(o)**

*First*: two or more persons agreed to violate 18 U.S.C. § 924(c);

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy; and

*Fourth*: there was interdependence among the members of the conspiracy.

## III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of the lesser included offense of Count 7 of the Second Superseding Indictment is: not less than 5 years' imprisonment and up to 40 years' imprisonment; a term of supervised release of at least 4 years; a maximum fine of $5,000,000; and a $100 special assessment fee.

The maximum sentence for a violation of Count 8 of the Second Superseding Indictment is: not more than 20 years' imprisonment; a maximum term of supervised release of 3 years; a maximum fine of $250,000; and a $100 special assessment fee.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true:

**In Late 2024, Special Agents with the ATF began an investigation into violence, drugs, and guns in an apartment complex in the Denver Metro Area.**

**An ATF confidential informant ("CI") contacted co-defendant Luis Aguilera-Pericaguan, who stated that he knew individuals in the apartment complex with access to**

guns and drugs, and he agreed to introduce those individuals to the CI and the CI's associates (undercover agents). He introduced co-defendant Guerra-Caballero ("Guerra") to the UCs, and the UCs conducted several undercover purchases of guns, as well as a small amount of illegal narcotics. In January of 2025, the CI and UCs communicated with Guerra to set up more undercover purchases, and discussed other potential illegal activity.

On January 24, 2025, Guerra was travelling out of the Denver area, and so he sent Villamediana-Villanueva ("Villamediana") to meet with the UCs and sell a rifle on his behalf. Villamediana came to the undercover location in Denver, Colorado, and brought a Rock River Arms 7.62mm (AR-15 style) rifle with a high-capacity magazine. During negotiations, Guerra participated in phone calls with Villamediana and the UCs as they discussed the price for the rifle. Both Villamediana and Guerra also discussed other illegal activity, including potential drug dealing. Both Guerra and Villamediana offered to provide criminal services for hire.

During the conversation, the UCs discussed their plans for an upcoming purchase of ten pounds of methamphetamine. The UCs said that they did not trust the methamphetamine sellers. Guerra and Villamediana proposed that they could bring a team of individuals to provide security for the deal. They proposed that the team of individuals would be large enough to provide adequate security, and would bring and carry firearms in order to provide security. The UCs asked Villamediana whether his group had done similar things in the past, and he responded that they had done similar things in Venezuela in the past.

Guerra and Villamediana agreed on the terms of providing an armed security team for the ten-pound methamphetamine purchase that was planned for the following week. Each member of the detail, including Guerra and Villamediana, would receive a payment of $1000 for their part in providing armed security. They also completed the sale of the rifle to the UCs.

Over the next few days, the UCs communicated with Guerra regarding details for the methamphetamine purchase and the armed security plan. The deal was arranged for January 29, 2025. That day, Guerra was still travelling outside of the Denver area, and so he coordinated the arrangements remotely. Altogether, six co-defendants arrived at the undercover location, in Denver, Colorado, to provide a security detail. First, Pena and Arguello-Villegas arrived in a vehicle. Pena had a video call with Guerra while they were waiting for additional arrivals, and Guerra spoke over the video call with the UCs. Guerra explained that there would be six members of the team, that four would be inside and two would be outside the undercover location, and that he would personally speak with the team as soon as they arrived and make sure everyone understood the plan. Guerra confirmed that all members of the team were aware of the nature of the security job.

A little later, Villamediana arrived, and drove his vehicle into the undercover location. Separately, Hernandez-Gonzalez, Ocopio-Villalobos, and Hernandez-Villacreses arrived. Once all six had arrived, Guerra had another video call, and confirmed that everyone was armed. Villamediana provided a revolver he had brought to Arguello-Villegas. The defendant arrived with a firearm, as did Hernandez-Gonzalez and

**Hernandez-Villacreses. Villamediana took an AR-15 style rifle from his vehicle, and carried it openly for the rest of the deal. Ocopio-Villalobos did not carry a firearm.**

**Guerra and the UCs then discussed the details of the upcoming deal. They explained that they were purchasing ten pounds of methamphetamine, and confirmed that everyone understood and was willing to provide security for the deal in return for a payment of $1000. All of the defendants confirmed that they understood, and were willing to participate. Then Guerra confirmed the plan with the other six defendants, including this defendant, who prepared the undercover location for the deal.**

**Thereafter, other ATF UCs acting as the methamphetamine sellers arrived and conducted a ruse sale of ten pounds of substance with the appearance of methamphetamine. During the transaction, each of the defendants remained in the undercover location providing security, and Villamediana held the loaded AR rifle on his lap during the deal. After the deal was concluded and the sellers left, the six defendants (including this defendant) were taken into custody. The five firearms were recovered, and were: a Taurus G3C 9mm pistol, a Sig Sauer P365 9mm pistol, a Smith & Wesson SD9VE 9mm pistol, a Ruger Blackhawk .357 magnum revolver, and a privately manufactured AR-15 style rifle with no serial number.**

**Guerra was arrested in Indiana.**

**The firearms carried on January 29, 2025, all functioned as designed. The defendant knowingly and voluntarily conspired with others, with interdependence, to possess with intent to distribute more than 50 grams of methamphetamine, and to carry a firearm during and in relation to the conspiracy to possess with intent to distribute methamphetamine.**

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the

Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a) The government's position is that the base offense level is 32 under USSG § 2D1.1(a)(5) and (c)(4). As noted below, the defendant argues that a mitigating role reduction applies under USSG § 3B1.2. As a result, the defendant's position is that the base offense level is 30 under USSG § 2D1.1(a)(5).

b) The parties agree that the defendant should receive a 2-level enhancement for possessing a firearm.

c) The defendant's position is that the defendant should receive a 4-level mitigating role reduction under USSG §§ 3B1.2(a) and 2D1.1(e). The government's position is that the defendant should not receive a mitigating role reduction.

d) The adjusted offense level is 34 under the government's calculations and 28 under the defendant's calculations.

e) The defendant should receive a downward adjustment of 3-levels for acceptance of responsibility. The resulting total offense level is 31 under the government's calculations and 25 under the defendant's calculations.

f) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

g) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

h) The advisory guideline range resulting from the government's calculations is 108-135 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 108 months (bottom of Category I) to 235 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

i) The advisory guideline range resulting from the defendant's calculations is 60-71 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 60 months (the

statutory minimum) to 137 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

j) Pursuant to guideline § 5E1.2, the fine range for this offense would be (i) $30,000 to $5,000,000, plus applicable interest and penalties, under the government's offense level calculations; and (ii) $20,000 to $5,000,000, plus applicable interest and penalties, under the defendant's offense level calculations.

k) Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 4 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

[Continued on the next page.]

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 1/28/26

Michelle Peña
Defendant

Date: 1/28/26

Jamie Hubbard
Attorney for Defendant

Date: 1/28/26

Garreth Winstead
Talia Bucci
Assistant U.S. Attorney