EN EL TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE COLORADO

Acción penal no. 25-cr-00063-SKC-3

**ESTADOS UNIDOS DE AMÉRICA,**

    **Parte Acusadora,**

contra

**3. MICHELLE PEÑA,**

    **Acusado**

## ACUERDO DE DECLARACIÓN DE CULPABILIDAD

Los Estados Unidos de América (el gobierno), por medio de Garreth Winstead, fiscal adjunto de los Estados Unidos para el distrito de Colorado, y Talia Bucci, fiscal adjunta de los Estados Unidos, y el acusado, Michelle Peña, personalmente y por medio de su abogada, Jamie Hubbard, presentan el siguiente acuerdo de declaración de culpabilidad de conformidad con D.C.COLO.LCrR 11.1. Este acuerdo vincula únicamente a la División Penal de la Fiscalía de los Estados Unidos para el Distrito de Colorado y el acusado.

### I. ACUERDO

    **A. Acuerdo del acusado:**

El acusado acepta:

(1) declararse culpable de un delito menor incluido en el cargo 7 de la segunda acusación sustitutiva, en la que se le imputa un delito de conspiración para poseer con intención de distribuir más de 50 gramos de una mezcla de metanfetamina, en contravención del artículo 21 U.S.C. § 846; y declararse culpable del cargo 8 de la segunda acusación sustitutiva por conspiración para utilizar un arma de fuego durante y en relación con un delito de tráfico de drogas, en contravención del artículo 18 U.S.C. § 924(o);

(2) renunciar a ciertos derechos de apelación y de impugnación colateral, tal y como se explica detalladamente a continuación;

(3) aceptar no impugnar la confiscación, tal y como se describe más detalladamente a continuación.

Court Exhibit

1A

### B. Obligaciones del Gobierno:

El presente acuerdo se celebra de conformidad con la Fed.R.Crim.P.11(c)(1)(A) y (B). El Gobierno se compromete a recomendar una pena dentro del margen establecido por las pautas, como lo calcule finalmente el Juez. Las partes entienden que el presente acuerdo no es vinculante para el Juez. Los Estados Unidos también acuerdan solicitar la desestimación del cargo 9 de la segunda acusación sustitutiva en relación con este acusado en el momento de dictar la pena. En caso de que la declaración de culpabilidad sea anulada por petición del acusado, el gobierno podrá, a su entera discreción, solicitar el restablecimiento de cualquiera o todos los cargos desestimados de conformidad con el presente acuerdo y, potencialmente, presentar una acusación sustitutiva.

Siempre que el acusado no incurra en conductas prohibidas ni implique de otro modo los apartados 3C1.1 y 3E1.1 de las Pautas Federales de Condenas (USSG), cmt. n.4 entre la declaración de culpabilidad y la condena en este caso, el gobierno acepta que el acusado reciba una reducción de dos niveles por aceptar su responsabilidad de conformidad con USSG § 3E1.1(a) y acepta presentar una moción solicitando que el acusado reciba una reducción de un nivel por aceptar su responsabilidad de conformidad con USSG § 3E1.1(b).

Si el acusado incurre en una conducta que implique la aplicación de la USSG § § 3C1.1 cmt. N.4 entre la declaración de culpabilidad y la imposición de la condena en este caso, además de cualquier otra consecuencia, el gobierno quedará liberado de sus obligaciones en virtud del acuerdo de declaración de culpabilidad, y el acusado no tendrá por ello ningún derecho a retractarse del acuerdo de declaración de culpabilidad.

### C. Renuncia del acusado a la apelación:

El acusado es consciente de que el artículo 18 U.S.C. § 3742 le otorga el derecho a apelar la condena, incluida la forma en que se determina dicha sentencia. Entendiendo esto, y a cambio de las concesiones realizadas por el Gobierno en este acuerdo, el acusado, a sabiendas y voluntariamente renuncia al derecho de apelar cualquier asunto relacionado con este proceso, condena o sentencia (incluida la orden de indemnización), a menos que cumpla uno de los siguientes criterios:

(1) la condena excede la pena máxima prevista en la(s) ley(es) de condena;

(2) la condena excede el límite superior del margen recomendado por las Pautas de Condena que se aplican a los antecedentes penales del acusado (según lo determine el juez del distrito) con un nivel delictivo total de 31; o

(3) el gobierno apela la condena impuesta.

Si se aplica el primer criterio, el acusado solo puede apelar la cuestión de cómo su condena excede la condena máxima prevista por la ley. Pero si se aplica uno de los dos últimos criterios, el acusado puede apelar por cualquier motivo que sea debidamente admisible en una apelación tras una declaración de culpabilidad.

El acusado también renuncia consciente y voluntariamente al derecho de impugnar este proceso, condena o sentencia (incluida la orden de indemnización) en cualquier ataque colateral (incluido, entre otros, un recurso presentado en virtud del artículo 2255 del título 28 del Código de los Estados Unidos). Esta disposición de renuncia no impide al acusado solicitar una reparación que de otro modo estaría disponible en un recurso incidental por cualquiera de los siguientes motivos:

(1) el acusado debería beneficiarse de un cambio explícitamente retroactivo en las pautas de imposición de penas o en la ley de imposición de penas;

(2) el acusado se vio privado de la asistencia efectiva de un abogado; o

(3) el acusado se vio perjudicado por la conducta indebida de la fiscalía.

Los Estados Unidos acuerdan no alegar una prohibición procesal a una reclamación por conducta indebida de la fiscalía planteada en una petición § 2255 basada en que el acusado no planteó esa cuestión en la apelación directa.

El acusado también renuncia al derecho de apelar cualquier condena impuesta por debajo o dentro del margen de las pautas tras la revocación de la libertad supervisada en este número de caso, excepto cuando el acusado se oponga sin éxito al grado de infracción aplicado por el juez durante el procedimiento de revocación del tribunal de distrito. En ese caso, esta renuncia no se aplica y el acusado puede apelar la condena impuesta tras la revocación de la libertad supervisada, incluso si dicha condena es inferior o está dentro del margen establecido por las pautas calculadas por el juez.

El acusado también renuncia al derecho de apelar la denegación de cualquier moción presentada en virtud del artículo 18 U.S.C. § 3582(c)(1)(A) cuando dicha denegación se base, en parte, en la determinación del juez de que no se justifica una reducción de la pena en virtud de los factores establecidos en el artículo 18 U.S.C. § 3553(a). Esta renuncia no se aplica a la apelación de una moción denegada en virtud del artículo 3582(c)(1)(A)(i) cuando el juez del distrito, al denegar la moción por motivos del artículo 3553(a), no haya tenido en cuenta los hechos que supuestamente establecen circunstancias extraordinarias y apremiantes como parte de su análisis del artículo 3553(a).

### D. Decomiso de bienes:

El acusado admite las acusaciones de decomiso. El acusado acepta además decomisar a los Estados Unidos de forma inmediata y voluntaria todos y cada uno de los bienes y propiedades, o partes de los mismos, sujetos a decomiso, de conformidad con 21 U.S.C. § 853, 18 U.S.C. § 924(d) y 28 U.S.C. § 2461(c), ya estén en posesión o bajo el control de los Estados Unidos, del acusado, de los representantes del acusado o en cualquier otro lugar. Los activos que se confiscarán incluyen específicamente, entre otros: una pistola Taurus G3C de 9 mm, una pistola Sig Sauer P365 de 9 mm, una pistola Smith & Wesson SD9VE de 9 mm, un revólver Ruger Blackhawk .357 magnum y un rifle de fabricación privada tipo AR-15 sin número de serie. El acusado acepta y consiente el decomiso de estos bienes de conformidad con cualquier

acción federal penal, civil y/o administrativa de decomiso. El acusado entiende que, de conformidad con el artículo 18 U.S.C. § 983, la agencia que realiza la incautación está obligada a enviar una notificación en los asuntos de decomiso civil no judicial. Habiendo sido informado de dichos derechos en relación con la notificación, el acusado renuncia por la presente, de forma consciente y voluntaria, a su derecho a que se le envíe la notificación dentro de los plazos de tiempo establecidos en el artículo 18 U.S.C. § 983 y a que se le devuelva la propiedad si la notificación no se envía dentro de los plazos de tiempo prescritos. El acusado acepta además la confiscación de cualquier activo sustitutivo hasta el valor de cualquier propiedad descrita anteriormente, de conformidad con el artículo 21 U.S.C. § 853(p) y las Normas Federales de Procedimiento Penal 32.2(e).

El decomiso de los bienes del acusado no se considerará como satisfacción de ninguna multa, indemnización, costo de encarcelamiento o cualquier otra sanción que este Juez pueda imponer al acusado además del decomiso.

## II. ELEMENTOS DE LOS DELITOS

Las partes acuerdan que los elementos de los cargos son los siguientes:

### Cargo 7: 21 U.S.C. § 846

*Primero*: dos o más personas acordaron violar las leyes federales sobre drogas;

*Segundo*: el acusado conocía el objetivo esencial de la conspiración;

*Tercero*: el acusado a sabiendas y voluntariamente se involucró en la conspiración;

*Cuarto*: existía interdependencia entre los miembros de la conspiración; y

*Quinto*: el alcance total de la conspiración involucró al menos 50 gramos de una mezcla que contenía metanfetamina.

### Cargo 8: 18 U.S.C. § 924(o)

*Primero*: dos o más personas acordaron violar 18 U.S.C. § 924(c);

*Segundo*: el acusado conocía el objetivo esencial de la conspiración;

*Tercero*: el acusado se involucró a sabiendas y voluntariamente en la conspiración; y

*Cuarto*: existía interdependencia entre los miembros de la conspiración.

## III. PENA MÁXIMA ESTABLECIDA POR LA LEY

La pena máxima por infringir el delito menor incluido en el cargo 7 de la segunda acusación sustitutiva es: una pena de prisión de entre 5 y 40 años; un período de libertad supervisada de al menos 4 años; una multa máxima de $5.000.000; y una tasa especial de $100.

La pena máxima por infringir el cargo 8 de la segunda acusación sustitutiva es: no más de 20 años de prisión; un período máximo de libertad supervisada de 3 años; una multa máxima de $250.000; y una tasa especial de $100.

## IV. CONSECUENCIAS COLATERALES

La condena puede provocar la pérdida de derechos civiles, incluidos, entre otros, el derecho a poseer armas de fuego, votar, ocupar cargos electivos y formar parte de un jurado.

Si el acusado es un extranjero, la condena puede provocar su deportación y expulsión de los Estados Unidos, o su confinamiento indefinido si no hay ningún país al que pueda ser deportado, la denegación de su futura admisión en los Estados Unidos y/o la denegación de la ciudadanía.

## V. ESTIPULACIÓN DE LOS HECHOS

La base fáctica de esta declaración se expone a continuación. Dado que el Juez, como parte de su metodología de imponer la pena, debe calcular el rango de las pautas recomendadas para el delito por el que se dicta la condena, considerar la conducta relevante y tener en cuenta los demás factores establecidos en el artículo 3553 del título 18 del Código de los Estados Unidos, se pueden incluir a continuación hechos adicionales que sean pertinentes para esas consideraciones y cálculos. En la medida en que las partes no estén de acuerdo con los hechos expuestos a continuación, la estipulación de hechos identifica cuáles son los hechos que se sabe que están en disputa en el momento de la ejecución del acuerdo de declaración de culpabilidad.

Esta estipulación de hechos no impide que cualquiera de las partes presente hechos adicionales no contradictorios que sean relevantes para el cálculo de las pautas del Juez, para otros factores del artículo 18 U.S.C. § 3553 o para la decisión general del Juez sobre la condena.

Las partes estipulan que los siguientes hechos son ciertos:

**A finales de 2024, agentes especiales de la ATF iniciaron una investigación sobre violencia, drogas y armas en un complejo de apartamentos en el área metropolitana de Denver.**

**Un informante confidencial de la ATF ("CI" por las siglas en inglés) se puso en contacto con el coacusado Luis Aguilera-Pericaguan, que dijo que conocía a personas en el complejo de apartamentos con acceso a armas y drogas, y acordó a presentar a esas personas al informante confidencial y a los colaboradores del informante confidencial (agentes encubiertos). El presentó al coacusado Guerra-Caballero ("Guerra") a los agentes encubiertos, y ellos realizaron varias compras encubiertas de armas, así como de una pequeña cantidad de narcóticos ilegales. En enero de 2025, el informante confidencial y los**

agentes encubiertos se comunicaron con Guerra para organizar más compras encubiertas y discutieron otras posibles actividades ilegales.

El 24 de enero de 2025, Guerra estaba fuera del área de Denver, por lo que envió a Villamediana-Villanueva ("Villamediana") a reunirse con los agentes encubiertos y vender un rifle por parte de él. Villamediana llegó al lugar encubierto en Denver, Colorado, y llevó un rifle Rock River Arms de 7,62 mm (tipo AR-15) con un cargador de alta capacidad. Durante las negociaciones, Guerra participó en llamadas telefónicas con Villamediana y los agentes encubiertos mientras discutían el precio del rifle. Tanto Villamediana como Guerra también discutieron otras actividades ilegales, incluido el posible tráfico de drogas. Tanto Guerra como Villamediana se ofrecieron a prestar servicios delictivos a cambio de una remuneración.

Durante la conversación, los agentes encubiertos discutieron sus planes para una próxima compra de diez libras de metanfetamina. Los agentes encubiertos dijeron que no confiaban en los vendedores de metanfetamina. Guerra y Villamediana propusieron que podrían traer un equipo de personas para proporcionar seguridad para la transacción. Propusieron que el equipo de personas fuera lo suficientemente grande como para proporcionar la seguridad adecuada y que trajeran y portaran armas de fuego para garantizar la seguridad. Los agentes encubiertos le preguntaron a Villamediana si su grupo había hecho cosas similares en el pasado, y él respondió que habían hecho cosas similares en Venezuela en el pasado.

Guerra y Villamediana acordaron los términos para proporcionar un equipo de seguridad armado para la compra de diez libras de metanfetamina que estaba planeada para la semana siguiente.

Cada miembro del equipo, incluidos Guerra y Villamediana, recibiría un pago de 1.000 dólares por su participación en la seguridad armada. También completaron la venta del rifle a los agentes encubiertos.

Durante los días siguientes, los agentes encubiertos se comunicaron con Guerra para concretar los detalles de la compra de metanfetamina y el plan de seguridad armada. El trato se acordó para el 29 de enero de 2025. Ese día, Guerra seguía viajando fuera del área de Denver, por lo que coordinó los preparativos a distancia. En total, seis coacusados llegaron al lugar encubierto, en Denver, Colorado, para proporcionar seguridad. Primero llegaron Peña y Arguello-Villegas en un vehículo. Peña mantuvo una videollamada con Guerra mientras esperaban a que llegaran los demás, y Guerra habló por videollamada con los agentes encubiertos. Guerra explicó que habría seis miembros del equipo, que cuatro estarían dentro y dos fuera del lugar encubierto, y que él mismo hablaría con el equipo tan pronto como llegaran para asegurarse de que todos entendían el plan. Guerra confirmó que todos los miembros del equipo conocían la naturaleza del trabajo de seguridad.

Poco después, llegó Villamediana y condujo su vehículo hasta el lugar encubierto. Por separado, llegaron Hernández-González, Ocopio-Villalobos y Hernández-Villacreses.

Una vez que llegaron los seis, Guerra realizó otra videollamada y confirmó que todos estaban armados. Villamediana le proporcionó a Arguello-Villegas un revólver que había traído. El acusado llegó con un arma de fuego, al igual que Hernández-González y

Hernández-Villacreses. Villamediana sacó un rifle tipo AR-15 de su vehículo y lo llevó abiertamente durante el resto de la transacción. Ocopio-Villalobos no llevaba una arma de fuego.

Guerra y los agentes encubiertos discutieron entonces los detalles de la próxima transacción. Explicaron que iban a comprar diez libras de metanfetamina y confirmaron que todos lo entendían y estaban dispuestos a garantizar la seguridad del acuerdo a cambio de un pago de $1.000. Todos los acusados confirmaron que lo entendían y que estaban dispuestos a participar. A continuación, Guerra confirmó el plan con los otros seis acusados, incluido este acusado, que preparó el lugar encubierto para el acuerdo.

A partir de ahí, otros agentes encubiertos de la ATF que actuaban como los vendedores de metanfetamina llegaron y llevaron a cabo una venta simulada de diez libras de una sustancia con apariencia de metanfetamina. Durante la transacción, cada uno de los acusados permaneció en el lugar encubierto proporcionando seguridad, y Villamediana sostuvo el rifle AR cargado en su regazo durante la transacción. Una vez concluida la transacción y se habían ido los vendedores, los seis acusados (incluido este acusado) fueron detenidos. Se recuperaron las cinco armas de fuego, que eran: una pistola Taurus G3C de 9 mm, una pistola Sig Sauer P365 de 9 mm, una pistola Smith & Wesson SD9VE de 9 mm, un revólver Ruger Blackhawk .357 magnum y un rifle de fabricación privada tipo AR-15 sin número de serie.

Guerra fue detenido en Indiana.

Las armas de fuego que portaban el 29 de enero de 2025 funcionaban correctamente. El acusado conspiró de forma consciente y voluntaria con otras personas, de manera interdependiente, para poseer con intención de distribuir más de 50 gramos de metanfetamina y para portar un arma de fuego durante y en relación con la conspiración para poseer con intención de distribuir metanfetamina.

## VI. CÁLCULO DE LAS PAUTAS CONSULTIVAS

Las partes entienden que la imposición de una condena en este asunto se rige por el artículo 18 U.S.C. § 3553. Para determinar la condena concreta que se impondrá, el Juez debe tener en cuenta siete factores. Uno de esos factores es el margen de penas calculado por el Juez en virtud de las pautas consultivas emitidas por la Comisión de Penas de los Estados Unidos. Con el fin de ayudar al Juez en este sentido, las partes exponen a continuación su estimación del rango de condenas consultivo exigido por las Pautas de Penas de los Estados Unidos. En la medida en que las partes no estén de acuerdo con los cálculos de las pautas, la exposición que figura a continuación identifica las cuestiones que son objeto de desacuerdo.

El cálculo de las pautas que figura a continuación es una estimación de buena fe de las partes, pero solo es una estimación. Las partes entienden que el Gobierno tiene la obligación independiente de ayudar al Juez a determinar con precisión el rango correcto de las pautas. A tal fin, el Gobierno puede argumentar que los hechos identificados en el informe pre-condenatorio, o identificados de otro modo durante el proceso de imposición de la pena, afectan a la estimación que figura a continuación.

a) La posición del gobierno es que el nivel básico de delito es 32 según USSG § 2D1.1(a)(5) y (c)(4). Como se indica a continuación, el acusado sostiene que se aplica una reducción por papel mitigado según USSG § 3B1.2. Como resultado, la posición del acusado es que el nivel básico de delito es 30 según USSG § 2D1.1(a)(5).

b) Las partes están de acuerdo en que el acusado debe recibir un aumento de 2 niveles por posesión de un arma de fuego.

c) La posición del acusado es que debe recibir una reducción de 4 niveles por un papel mitigado según USSG §§ 3B1.2(a) y 2D1.1(e). La posición del gobierno es que el acusado no debe recibir una reducción por mitigado.

d) El nivel de delito ajustado es de 34 según los cálculos del gobierno y de 28 según los cálculos del acusado.

e) El acusado debe recibir una reducción de 3 niveles por aceptar su responsabilidad. El nivel de delito total resultante es de 31 según los cálculos del gobierno y de 25 según los cálculos del acusado.

f) Las partes entienden que el cálculo de los antecedentes penales del acusado es provisional y se basa en las condenas anteriores del acusado. Las partes consideran que el acusado se encuentra en la categoría I de antecedentes penales.

g) No se aplican los ajustes por delincuente habitual/medio de vida delictivo/delincuente habitual armado.

h) El margen de la pauta consultiva resultante de los cálculos del Gobierno es de 108 a 135 meses. Sin embargo, con el fin de ser lo más precisos posible, dado que la categoría de antecedentes penales no está determinada en este momento, el nivel o niveles delictivo(s) estimados anteriormente podrían dar lugar a un margen de entre 108 meses (mínimo de la categoría I) y 235 meses (máximo de la categoría VI). El margen de la pauta no excedería, en ningún caso, los máximos legales acumulativos aplicables a los cargos de condena.

i) El margen de las pautas recomendadas resultante de los cálculos del acusado es de 60 a 71 meses. Sin embargo, con el fin de ser lo más precisos posible, y dado que la categoría de antecedentes penales aún no se ha determinado, los niveles de delito estimados anteriormente podrían dar lugar a un rango de entre 60 meses (el

mínimo legal) y 137 meses (máximo de la categoría VI). El margen de las pautas no excedería, en ningún caso, los máximos legales acumulativos aplicables a los cargos por los que se le declara culpable.

j) De conformidad con la directriz § 5E1.2, el margen de la multa para este delito sería (i) de 30.000 a 5.000.000 dólares, más los intereses y sanciones aplicables, según los cálculos del nivel delictivo del gobierno; y (ii) de 20.000 a 5.000.000 dólares, más los intereses y sanciones aplicables, según los cálculos del nivel delictivo del acusado.

k) De conformidad con la pauta § 5D1.2, si el Juez impone un período de libertad supervisada, dicho período será de al menos 4 años.

Las partes entienden que el Juez es libre, tras considerar y aplicar adecuadamente todos los factores del artículo 18 U.S.C. §3553, de imponer la pena razonable que considere apropiada en el ejercicio de su discrecionalidad y que dicha pena puede ser inferior a la prevista en las pautas recomendadas (en duración o forma), dentro del rango de las pautas consultivas, o por encima del rango de las pautas consultivas, hasta incluir la pena de prisión máxima prevista por la ley, independientemente de cualquier cálculo o posición de cualquiera de las partes sobre cualquier factor del artículo 18 U.S.C. § 3553.

## VII. ACUERDO COMPLETO

El acuerdo revelado ante el Juez constituye el acuerdo completo. No existen otras promesas, acuerdos o "acuerdos paralelos", términos, condiciones, entendimientos o garantías, expresos o implícitos. Al celebrar este acuerdo, ni el Gobierno ni el acusado se han basado ni se basan en ningún otro término, promesa, condición o garantía.

Fecha: 1/20/26

Michelle Peña
Acusado

Fecha: 1/20/26

Jamie Hubbard
Abogada del acusado

Fecha: _____

Garreth Winstead
Talia Bucci
Fiscal adjunto de los Estados Unidos